UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BEVERLY G. MORRIS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CASE NO. 07-CV-715-FHM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## OPINION AND ORDER

Plaintiff, Beverly G. Morris, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's August 25, 2004 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration.  A hearing before an Administrative Law Judge (ALJ) was held February 21, 2006.  By decision dated May 5, 2006, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied review of the findings of the ALJ on October 23, 2007.  The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 43 years old at the time of the hearing.  She claims to have been unable to work since April 10, 2003, due to: urticaria;[2] non-insulin dependent diabetes mellitus; hypertension; obesity; hypolipodemia;[3] gastroesophageal reflux with history of hiatal hernia; liver disease; tingling and numbness in the arms and legs; fatigue; pain; and medication side effects. [R. 733, 764-767].

The ALJ determined that Plaintiff has severe impairments consisting of urticaria, diabetes mellitus, non-insulin dependent and hypertension. [R. 16].  Despite these impairments, the ALJ found that Plaintiff retains the residual functional capacity (RFC) for sedentary work. [R.17].  He determined that Plaintiff's RFC precluded performance of her past relevant work (PRW) as a cashier, cook helper, floor supervisor, sales clerk, hotel clerk and photo lab work supervisor. [R. 18].  Based upon the testimony of a Vocational Expert (VE), he found that jobs exist in significant numbers in the economy

---

[2] Urticaria, called also "hives," are raised, often itchy, red welts on the surface of the skin. When swelling or welts occur around the face, especially the lips and eyes, it is called angioedema.  Swelling from angioedema can also occur around the hands, feet and throat. The welts (red lesions with a red "flare" at the borders) may enlarge, spread and join together to form larger areas of flat, raised skin. They can also change shape, disappear and reappear within minutes or hours.  The welts tend to start suddenly and resolve quickly. *See* medical definitions online at: http://www.nlm.nih.gov /medlineplus/ency/article/000845.htm; see also http://www.medicinenet.com/hives/article.htm

[3] Hyperlipidemia (hyperlipoproteinemia, dyslipidemia, hypercholesterolemia) is a lipid disorder, the medical term for high blood cholesterol and triglycerides. *See* medical definitions online at: http:// www.nlm.nih.gov/medlineplus/ency/article/00403.htm

that Plaintiff can perform with her RFC and concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 19].  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ committed reversible error as follows: 1) Plaintiff does not have the RFC to perform significant gainful activity; and 2) the ALJ erred in his credibility analysis. [Dkt. 15, p. 2].  For the reasons discussed below, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

### Medical Record

Plaintiff first reported a burning, itchy rash "all over" on January 13, 2003, in a telephone call to the OSU Physicians Health Care Center (OSU) requesting an appointment. [R. 659, 715].  Later that month she underwent an appendectomy. [R. 222-253, 422].  On March 26, 2003, Plaintiff was seen at the OU Physicians Tulsa Family Practice (OU) clinic complaining of a rash that had started the previous week on her arms and legs, that spread to her back and then to her face and upper chest. [R. 421].  Physical exam revealed diffuse erythemic (redness of the skin) maculer (spotty) papular (wheals or welts) rash. *Id.*  Allergic Dermatitis was assessed and Plaintiff was started on Atarax[4] and a cortisone cream for specific spots. *Id.*   One month later,

---

[4] Atarax (Hydroxyzine) is used to relieve the itching caused by allergies and to control nausea and vomiting caused by various conditions, including motion sickness. It is also used for anxiety and to treat the symptoms of alcohol withdrawal. *See* drug information online at: http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682866.html

Plaintiff was seen for worsening symptoms and was prescribed another topical medication, Triamcinolone.[5]  Only mild relief with that medication was reported on May 4, 2003. [R. 419].  On May 7, 2003, Plaintiff's treating physician reported Plaintiff had recently been laid off work and that her hives were most likely due to increased emotional stress. [R. 418].  Her medications were continued and the doctor planned to refer her to a dermatologist if not improved in one to two weeks. *Id.*  When seen on June 6, 2003, Plaintiff's condition had not improved and she was prescribed Prednisone.[6] . [R. 417].

Plaintiff was seen twice during June 2003 in the emergency room at Hillcrest Medical Center for chest and abdominal pain. [R. 254-274, 275-287].   Follow-up treatment notes at OU after both episodes show treatment for hypertension and include observations of puffiness and rash over the face and welts on the arms. [R. 415, 416]. Possible reaction to Toradol, a pain medication given at the hospital, was suspected. [R. 415].  Benadryl was thought to have helped. *Id.*

On July 1, 2003, Plaintiff was diagnosed with idiopathic (cause unknown) urticaria by an OU physician who noted Plaintiff was under "lots of stress - may cause urticaria" but recommended Plaintiff see an allergist and consider food allergies. [R.

---

[5]  Triamcinolone is used to treat the itching, redness, dryness, crusting, scaling, inflammation and discomfort of various skin conditions. *See* drug information online at: http://www.nlm.nih.gov/med lineplus/druginfo/meds/a601124.html

[6]  Prednisone is a steroid and is used alone or with other medications to treat the symptoms of low corticosteroid levels (lack of certain substances that are usually produced by the body and are needed for normal body functioning). Prednisone is also used to treat other conditions in patients with normal corticosteroid levels. These conditions include certain types of arthritis; severe allergic reactions; multiple sclerosis (a disease in which the nerves do not function properly); lupus (a disease in which the body attacks many of its own organs); and certain conditions that affect the lungs, skin, eyes, kidneys blood, thyroid, stomach, and intestines. *See* drug information online at: http://www.nlm. nih.gov/medlineplus/druginfo/meds/a601102.html

414].  Plaintiff was seen at the Hillcrest emergency room on July 11, 2003, for abdominal pain and again on July 20, 2003, for diffuse rash, itching and swelling of the lips and throat. [R. 288-312].  Follow-up care was provided by OU on July 21, 2003, with a notation that the rash was resolved. [R. 413].  The rash reappeared on July 27, 2003 and spread from the genital area to the scalp, face, ears, nose, neck, chest, back, perineum, buttocks, arms, legs and hands. [R. 313-321].

On August 4, 2003, an upper GI series examination revealed a small hiatal hernia with minimal associated gastroesophageal reflux. [R. 322-325].  Over the next four months, Plaintiff visited the emergency room or the OU clinic nine times for problems related to her epigastric problems. [R. 326-338, 409-410, 405-407, 358-377, 400, 463-502].  During that same time period, She was seen five times for urticaria flare, dermatitis, diffuse pruritic (itching) rash or hives, facial and eyelid swelling and exoriation (erosion) of the skin. [R. 408, 339-346, 347-357, 401-404, 398-399].

On December 9, 2003, Plaintiff was held overnight at Hillcrest for chest pain which was ultimately thought to be "most likely psychogenic in origin." [R. 476-502]. Her hyperglycemia (abnormally high blood sugar) was subsequently controlled with insulin. [R. 478].  Her attending physician suspected hyperglycemia was "secondary to her current regimen of steroids as well as underlying stress-inducing component."  She exhibited no manifestation of urticaria during her hospitalization. *Id.*

Plaintiff commenced treatment at the OSU Physicians Health Care Center (OSU) on January 6, 2004. [R. 661, 717].  Rash appearing mostly on the lower extremities and trunk was treated with prednisone on January 14, 2004. [R. 511-515].  The physician noted that Plaintiff's rash was not responding to the prednisone "like normally does" and

5

voiced concern that the steroid may be affecting Plaintiff's blood pressure. *Id.* A punch biopsy of Plaintiff's skin was obtained at OSU on January 29, 2004, in which no morphologic (form and structure) variation was identified. [R. 656, 713, 667, 730]. Because no patients were being seen by the local dermatologist, attempts to set an appointment were unsuccessful and Plaintiff was told she would have to go to Oklahoma City for a dermatology appointment. *Id.* There is no evidence in the record that she ever did so.

From January 2004 through November 2004, Plaintiff was treated at OSU and/or the Tulsa Regional Medical Center emergency room for urticaria symptoms no less than 20 times. [R. 511-677, 688-732]. On several occasions, when Plaintiff was being treated for other physical problems, i.e. severe headache, chest or abdominal pain, medical care providers also observed diffuse skin rash. [R. 516-527, 549-555, 698, 640, 641, 693-694].

On January 5, 2005, Plaintiff was seen at OSU for follow-up after an emergency room visit for hives where benadryl had been given. [R. 686-687]. No hives were found upon physical examination. *Id.* At her routine medication check-up at OSU on January 12, 2005, Plaintiff reported her blood pressure had been good at home, she was in no "distressing pain" at that time and "generally feels good." [R. 688-689]. During physical examination on that date, observations of erythemia and maculopapular (spots and bumps) rash were reported by medical care providers. *Id.*

The record contains a handwritten letter signed by OSU physician Angela J. Casteel, D O., on November 18, 2005, as follows:

6

> Ms. Morris has asked me to write a letter on her behalf in regards to disability. According to our records, Ms. Morris has been diagnosed and treated for the following: diabetes mellitus type II, non-insulin dependent, Hypertension - controlled, obesity, hyperlipidemia, urticaria, nonalcoholic steatotic hepatitis and infiltrative liver disease. Ms. Morris is on several medications as well. Please do not hesitate to contact me for any questions or concerns.

[R. 733].

The record also contains a report by Ashok Kache, M.D., M.B.A., who examined Plaintiff on behalf of the Social Security Administration on October 24, 2004. [R. 678-683]. Dr. Kache recorded Plaintiff's history of knee pain, low back pain and multiple skin problems. Physical examination revealed full range of motion with some crunching and popping in the knees but no obvious swelling or deformity of the knees, normal musculoskeletal and neurologic findings with slight decrease in left-handed grip and some findings of carpal tunnel syndrome. Dr. Kache did not record any medical findings or offer any opinion regarding Plaintiff's skin condition. *Id.*

Normal results were reported in an EMG report dated March 8, 2006. [R. 735-736].

## The ALJ's Decision

The ALJ found Plaintiff had three severe impairments at step two: urticaria; non-insulin dependent diabetes mellitus; and hypertension. [R. 16].

At step three, the ALJ noted the Social Security regulations contain no specific listing for urticaria.[7]  He said:

---

[7]  The listings set out at 20 CFR pt. 404, subpt. P, App. 1 (pt. A) (1989), are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body (continued...)

7

However, the listings for skins disorders that do exist cite the presence of lesions lasting at least 3 months as a prerequisite for meeting or equaling the listing's requirements. The claimant's rash, if considered to be a lesion, has not been authenticated in the record to have endured 3 consecutive months.

[R. 17]. With regard to the medical evidence, the ALJ said:

Ms. Morris' urticaria or hives was worsening on her arms, things (sic), breasts, and abdomen at the time of her alleged onset. She used combinations of steroids, H-2 blockers, and antihistamines to combat the skin disorder. But these and other medications achieved only minimal and temporary improvement. The urticaria was sensitive to increases of stress. Ms. Morris complained of a severe itching rash that came with a flare-up of her urticaria. There was also a swelling of her tongue and throat and a stabbing pain radiating to her back. Her abdominal pain was believed to originate either in her pancreas or her gall bladder.

[R. 17] (exhibit citations omitted).

Regarding his credibility findings, the ALJ said:

It is not convincingly clear from the record or the claimant's testimony that any of her conditions or the combination of them prevents her from working. Her examination on October 24, 2004 showed her mobility to be more than she presented. Her urticaria appears to be more of an emotional problem for the claimant than a problem that actually prevents her from working. Her suspected multiple sclerosis for which she was to be examined has not been confirmed by the date of this decision. An EMG report on the claimant dated March 8, 2006 was identified by Shashi Husain, M.D. as normal.

[R. 18].

_____

[7] (...continued)
system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

At step four, the ALJ cited the testimony of the vocational expert (VE) at the hearing that Plaintiff's previous jobs as cashier, cook helper, floor supervisor, sales clerk, hotel clerk and photo lab work supervisor required light work which "is beyond her [RFC] for sedentary work." [R. 18]. In his discussion of his step five findings, the ALJ said:

> If the claimant had the [RFC] to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as cashier (sedentary).

[R. 19].

Based upon these findings, the ALJ concluded Plaintiff was not disabled. [R. 19].

## Discussion

The Court finds the ALJ's decision is deficient in several respects. His step three findings are not supported by the factual evidence in the record and are not adequately explained. His credibility determination is based upon an improper analysis of the medical record and his RFC is conclusory and not supported by substantial evidence.

## Step Three Finding

In evaluating whether a claimant meets or equals the criteria for a listed impairment, the ALJ is required to compare the symptoms, signs, and laboratory

findings regarding a claimant's impairments, as shown in the medical evidence associated with the claim, with the medical criteria shown with the listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a).   When making the determination whether a particular condition meets the requirements of a listed impairment, the ALJ is required at step three to discuss the evidence and explain why he/she found that the claimant was not disabled. *Clifton v. Chater,* 79 F.3d 1007, 1009-1010 (10th Cir.1996); 20 C.F.R. §§ 404.1526, 416.926.

The ALJ determined Plaintiff's urticaria is a severe impairment.  Although he did not identify the specific listing, he apparently applied Listing 8.00 in evaluating the severity of Plaintiff's impairment at step three.  *See* 20 C.F.R.  Pt. 404, Subpt. P, App. 1, Listing 8.00.  Under that listing, dermatitis (inflammation of the skin) is among the skin disorders that are to be evaluated. *Id.* § 8.00(A).   Documentation required for the evaluation includes information regarding the onset, duration, frequency of flareups and prognosis of the skin disorder, and "the location, size and appearance of lesions" and, "when applicable, history of exposure to toxins, allergens, ... stress factors, and your ability to function outside of a highly protective environment." *Id.* § 8.00(B).  Severity of the skin disorder is assessed on the extent of the skin lesions, the frequency of flareups of the skin lesions, how the symptoms, including pain, are limiting, the extent of treatment and how that treatment affects the claimant. *Id.* § 8.00(C).  Extensive skin lesions are described as involving multiple body sites or critical body areas that result in a very serious limitation, such as:

> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one

10

> extremity; that is, two upper extremities, two lower
> extremities, or one upper and one lower extremity.
> b. Skin lesions on the palms of both hands that very
> seriously limit your ability to do fine and gross motor
> movements.
> c. Skin lesions on the soles of both feet, the perineum, or
> both inguinal areas that very seriously limit your ability to
> ambulate.

Listing 8.00(C)(1).

The listing further provides:

> 2. *Frequency of flareups.*  If you have skin lesions, but they
> do not meet the requirements of any of the listings in this
> body system, you may still have an impairment that prevents
> you from doing any gainful activity when we consider your
> condition over time, especially if your flareups result in
> extensive skin lesions as defined in C1 of this section.
> Therefore, if you have frequent flareups, we may find that
> your impairment(s) is medically equal to one of these listings
> even though you have some periods during which your
> condition is in remission.  We will consider how frequent and
> serious your flareups are, how quickly they resolve, and how
> you function between flareups to determine whether you
> have been unable to do any gainful activity for a continuous
> period of at least 12 months or can be expected to be unable
> to do any gainful activity for a continuous period of at least
> 12 months.  We will also consider the frequency of your
> flareups when we determine whether you have a severe
> impairment and when we need to assess your residual
> functional capacity.

Listing 8.00(C)(2).

The term "lesion" appears only once in Plaintiff's treatment records. [R. 648,

704]. However, the presence of welts or wheals associated with Plaintiff's urticaria

flareups is noted consistently throughout the treatment records.  A wheal is defined as

"the typical lesion of urticaria, the dermal evidence of allergy; it is a smooth, slightly

elevated, discolored area on the body surface, often accompanied by severe itching."
Dorland's Ill. Medical Dictionary, 31st ed. (2007) 2108.

The ALJ noted that the listings for skin disorders cite the presence of lesions lasting at least three months as a prerequisite for meeting or equaling the listing's requirements. [R. 17].  *See* § 8.00(G) (the duration requirement is met if the skin disorder results in extensive skin lesions that persist for at least three months despite continuing treatment as prescribed).  The ALJ went on to say that "if considered to be a lesion" Plaintiff's rash "has not been authenticated in the record to have endured 3 consecutive months." *Id.*

Upon review of the record, the Court concludes there is ample medical documentation that Plaintiff's urticaria symptoms persisted well over three months. Additionally, the record contains evidence that Plaintiff's ability to ambulate was sometimes affected and that the rash frequently appeared on her feet and hands and, at least once, the perineum was involved.  The ALJ did not explain how he weighed this highly probative medical evidence in determining that Plaintiff's symptoms did not meet the duration or severity requirements of the listing.   In fact, the only discussion of the medical record offered by the ALJ was to acknowledge that Plaintiff's urticaria worsened at the time of her alleged onset and that medications achieved only minimal and temporary improvement. [R. 17]. *See* 42 U.S.C. 405(g); *Clifton*, 79 F.3d at 1009 (record must demonstrate that the ALJ considered all the evidence; ALJ must discuss uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects).  No medical expert opinion regarding whether Plaintiff's urticaria meets or equals the listings appears in the record.  The physician who performed a

12

physical examination on behalf of the agency did not address Plaintiff's skin disorder other than to note it in the medical history.

It is clear from the medical record that Plaintiff's urticaria met the duration requirement of the listing.  There is sufficient evidence in the record to create a question as to whether Plaintiff met the severity requirements of the listing.  Therefore, the Court concludes the ALJ's factual findings at step three are not supported by substantial evidence.  Because the Court does not weigh the evidence or substitute its judgment for that of the Commissioner, this case must be remanded for the ALJ to reconsider the medical evidence, to set out his specific findings and to explain his reasons for accepting or rejecting evidence at step three. *Clifton*, 79 F.3d at 1010.

### Credibility Determination

In deciding that Plaintiff's testimony was not convincing, the ALJ stated: "Her urticaria appears to be more of an emotional problem than a problem that actually prevents her from working." [R. 19].  The ALJ did not cite to any medical evidence in the record for this proposition and the record contains no such medical opinion.  Rather, Plaintiff's treating physicians sometimes commented that Plaintiff was experiencing a period of increased stress during urticaria flareups but none ever suggested Plaintiff's urticaria was an emotional problem and that Plaintiff could otherwise work.  The ALJ may not substitute his own lay opinion for that of a medical professional. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (ALJ's finding that claimant did not require assistive device was an improper substitution of his own medical opinion for that of treating physician) (citing *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996).  Furthermore, if the ALJ finds the Plaintiff suffers from an emotional problem that

13

amounts to a mental impairment, he must follow the required criteria for evaluating the severity of a mental impairment under the regulations. 20 C.F.R. § 404.1520a. The ALJ did not do so in this case.

Upon remand, after the ALJ has properly examined the medical record, he must revisit his credibility determination.

### RFC Determination

With regard to the ALJ's RFC and subsequent findings, the Court finds the record does not contain substantial evidence to support the ALJ's determination. The ALJ obviously found Plaintiff had functional limitations that were imposed by her impairments because he determined she could not return to the light work she had performed in the past. [R.18]. It should be noted here that the ALJ did not find any severe impairment with regard to Plaintiff's knees, so his step four finding was not made on that basis. The only impairments he credited were Plaintiff's urticaria, diabetes and hypertension. [R. 16]. He stated in his decision that Plaintiff's hypertension is chronic but controlled. *Id.* Thus, only urticaria and diabetes remained as impairments that impacted Plaintiff's RFC. The ALJ's finding was expressed in a conclusory statement that Plaintiff has the RFC for sedentary work. [R. 17]. He did not make specific RFC findings with regard to limitations imposed by Plaintiff's skin disorder. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). *See also Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (findings must be supported by substantial evidence). The ALJ did not identify Plaintiff's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis as required by Soc. Sec. R. 96-8p, 1996 WL 374174, at *7 (ALJ must discuss the claimant's ability to perform sustained work

14

activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity she can perform based on the evidence in the case record).  Upon remand, the ALJ must make specific findings and support his RFC assessment with evidence from the record.

### Conclusion

The decision of the ALJ is not supported by substantial evidence in the record. Accordingly, the Commissioner's finding that Plaintiff not disabled is REVERSED and REMANDED for reconsideration.

SO ORDERED this 18th day of February, 2009.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE